Beecher *v.* Allen.

---

SCHENECTADY GENERAL TERM, January 1849. *Cady, Paige, and Willard,* Justices.

5b　　169
81 AD¹391

## BEECHER *vs.* ALLEN and others, adm'rs of Day.

The 30th section of the judiciary act of May 12, 1847, prescribing in what special cases the respective county courts shall have original civil jurisdiction, is not unconstitutional.

Under the 14th section of the 6th article of the constitution, the legislature had the power to determine of what special cases the county courts should have jurisdiction. And it having exercised that power, by giving to those courts jurisdiction over actions of assumpsit, when all the defendants reside in the county where the action is commenced, and the damages claimed do not exceed $2000, county courts have authority to try actions of that nature.

Courts ought not rashly to presume that the legislature, in enacting a law, has transcended its powers. The presumption is the other way; and the strength of that presumption is increased in proportion to the number of successive legislatures which have coincided in the same measure. *Per* WILLARD, J.

THIS was an appeal by the defendants, from the Saratoga county court. The action was assumpsit, and was commenced in that court after the first Monday of July, 1847, and was tried in the term of January, 1848. The parties were inhabit-

Beecher *v.* Allen.

ants of the county of Saratoga, and the sum claimed in the plaintiff's declaration did not exceed $2000. The jury found a verdict for the plaintiff for $208,78. The facts and the legal questions arising thereon, appear from the following opinions delivered by members of the court.

*W. A. Beach*, for the plaintiff.

*E. F. Bullard*, for the defendants.

WILLARD, J. The plaintiffs, as administrators of Eliphas M. Day, deceased, in the year 1847, and after the first Monday of July of that year, brought a suit against the defendant, upon a guaranty in writing, endorsed on a promissory note made by Lucius Loss and George Kemp, in these words : " For value received I guaranty the collection of the within note, and waive all notice. July 19, 1842. Ira Beecher." It was admitted that E. M. Day died in December, 1842. It does not appear by the case to whom the note was made payable, nor the amount for which it was given, nor the time when. There was due on the day of trial, in the county court, according to the verdict of the jury, $208,78. We may infer that the note was payable to Ira Beecher or order, or that it was given to Day in his lifetime, at the same time the guaranty was executed ; in either of which cases the charge of the judge contained no error of which the defendants could complain. (*See Lequeer* v. *Prosser*, 1 *Hill*, 256. *Miller* v. *Gaston*, 2 *Id.* 188. 3 *Id.* 584.) The plaintiffs were entitled to recover.

But there is another question of greater importance in this case, and which deserves a careful examination. The action was assumpsit, commenced in the Saratoga county court after the first Monday of July, 1847, and was tried at the January term, 1848. The parties were inhabitants of Saratoga county, as we may infer from the evidence, and the sum claimed did not exceed two thousand dollars. This appeal, therefore, involves an inquiry as to the constitutionality of the 30th section of the judiciary act of May 12, 1847, and incidentally of a part

Beecher *v.* Allen.

of the 33d section of the code of procedure. The courts ought not rashly to presume that the legislature, in the enacting of any law, has transcended its powers. The presumption is the other way; and the strength of it is increased, in proportion to the number of successive legislatures which have coincided in the same measure.

The question is whether original civil jurisdiction can be conferred by the legislature on the county court, in any action known to the common law. The provision in the constitution, under which the question arises, is the fourteenth section of the sixth article; and is in these words: "The county court shall have such jurisdiction in cases arising in justices' courts, and in *special cases,* as the legislature may prescribe; but shall have no original civil jurisdiction, except in such special cases." A subsequent clause in the same section, authorizes the legislature "to confer equity jurisdiction in special cases, upon the county judge." The 30th section of the judiciary act of May 12, 1847, carries out the constitutional requirement above referred to, and prescribes in what special cases the respective county courts shall have original civil jurisdiction. It is in these words: "The county courts in each county shall have power to hear, try and determine, according to law, suits and proceedings by scire facias to revive any judgment in said courts, or that shall have been rendered in the present court of common pleas of said county, or to have execution of said judgments, or to revive any suit in said county courts; also of suits and proceedings for the admeasurement of dower, or for the partition of 'lands, when the lands are situated in the county where the court is held; also to hear, try and determine, according to law, the following actions, when all of the defendants at the time of the commencement of the action, reside in the county in which said court is held; actions of debt, assumpsit and covenant, when the debt or damages claimed shall not exceed two thousand dollars; actions for assault and battery, and false imprisonment, when the damages claimed do not exceed five hundred dollars; actions of trespass, and trespass on the case, for injuries to real or personal property, when the damages

claimed shall not exceed five hundred dollars; actions of replevin, when the value of the property claimed does not exceed one thousand dollars; and also to grant new trials in all such actions, suits, and proceedings."

In determining the question before us, it becomes necessary to inquire what is meant by the term *special cases* in the fourteenth section of the sixth article of the constitution, and what department of the government is clothed by that instrument, with power to determine, in the first instance, the meaning of that term.

I. The question what is meant by the term, *special cases,* was discussed in the senate, when the judiciary act was before that body, and more fully before the judiciary committee which reported the bill. It was contended by the learned chairman of that committee, now holding a seat on this bench, that, by the term *special cases* the framers of the constitution intended to confine the original civil jurisdiction of county courts to those particular cases to which the ordinary common law actions are not applicable. It is not improbable, from the discussions in the convention, that some of its members supposed this clause restricted the jurisdiction of the courts to certain statutory proceedings and cases, such as granting licenses for ferries, and the like. But the views of particular members of the convention are of subordinate importance. Those gentlemen were no better qualified to judge of the meaning of the constitution than their constituents. The instrument derives its force from the sanction given to it by the people at the polls. It is to be understood according to the language in which it is clothed. Judge Story has well collected the rules for interpreting a constitution or statute, in his Commentaries on the Constitution. (*Vol.* 1, *p.* 382 *et seq.*) Without repeating his several rules, with their qualifications and limitations, it is sufficient in general to observe, that the terms of the instrument are to be construed according to the sense and intention of the parties by whom it was adopted. This intention is to be gathered from the words, the context, the subject matter, the effects and consequences, or the reason and spirit of the instrument. When

the same words are used in other parts of the same instrument, and in statutes and in books of authority, a regard may be had to the ideas they are thus used to express, in order the more clearly to elucidate their meaning in the passage under dispute. Cotemporaneous expositions by the legislature, and especially by successive legislatures, are not without use in giving a practical construction even to a doubtful or equivocal term.

In looking at the question in dispute in the light of these rules, we shall find that the term *case*, in other parts of the constitution, and in divers parts of the revised statutes, is indisputably used as synonymous with *cause* or *action*. Thus in the 10th section of the 6th article it is said, " The testimony in equity *cases* shall be taken in like manner as in *cases* at law." If the term *cases*, in this passage, it to be construed as meaning merely a special proceeding, and not as embracing *actions*, the improvement with respect to taking the proofs on the equity side of the court, is a mere illusion. But, if we understand the term as synonymous with *actions*, it reconciles every difficulty, and harmonizes with other parts of the instrument.

So also by the 5th paragraph of section 14, now under discussion, it is declared that " the legislature may confer equity jurisdiction in *special cases* upon the county judge." Under this clause, the 31st section of the judiciary act of April 12, 1847, conferred equity jurisdiction on the county courts, in the following cases : " 1st. In suits and proceedings for the foreclosure of mortgages, when the mortgaged premises are situated in such county. 2d. For the sale of real estate of infants, when the real estate is situated and the infants reside in such county. 3d. For the care and custody of lunatics and habitual drunkards, residing in such county. 4th. For the satisfaction of judgments and decrees on which there shall remain due a sum exceeding seventy-five dollars, out of the property of a debtor, when an execution has been returned unsatisfied, and said debtor resides in such county. 5th. For the partition of lands in such county. 6th. For the admeasurement of dower in lands in such county." If the term *special cases*, in this paragraph of the constitution, is to be restricted to the narrow

Beecher *v.* Allen.

limits within which it is sought by some to confine the same words, in the first paragraph of the same section, much of the foregoing delegation of power could not be upheld. Yet the legislature of 1847 did not doubt the constitutionality of the foregoing section, nor has it been questioned since. The commissioners on pleadings and practice, in their report to the legislature of 1848, retained it with only a few verbal alterations, and it now forms the 33d section of the code of procedure. It thus embraces under the head of *special cases*, the action of partition of real property, with no other limitation than its location in the county. The action of partition was the ancient common law remedy for making partition among parceners. (*Lit. book* 3, *part* 1, *ch.* 1, § 241. *Co. Lit.* 163, *a*, 164, *b*, *and Hargrave's note* 23.) The action was extended in the reign of Henry the eighth to joint tenants and tenants in common, and has remained ever since, a common law action both in England and in this state. According to Mr. Hargrave, the jurisdiction of chancery, in making partition of lands, is of later origin, and cannot be traced farther back than the reign of Elizabeth, though it is conceded that both the common law courts and the court of chancery now have undisputed concurrent jurisdiction of the action. (*Harg. notes* 2, 3, *to Lit. supra.*) It is undoubtedly a civil action, within the proper definition of that term. The conferring original jurisdiction of that action upon the county courts, by the legislature of 1848, under the name of a *special case*, affords a legislative exposition of the term, which justifies every delegation of jurisdiction made by the 30th section of the judiciary act of 1847. No man can respect himself, who holds that it is constitutional to give the county judge jurisdiction in the action of *partition*, and is not constitutional to confer the like jurisdiction in assumpsit.

There are other parts of the constitution in which the same term is used, and in the same sense which the legislature have adopted. Thus the 23d section of the 6th article authorizes the establishment by the legislature of tribunals of conciliation, with such powers and duties as may be prescribed by law, and with authority to render obligatory judgments on the par-

ties, in matters in difference voluntarily submitted *to* them by the parties, "in such *cases* as shall be prescribed by *law.*" In this passage the word *cases* is obviously used as synonymous with causes or actions.

The term " *special,*" whether applied to "cases" or other judicial subjects, has long had a well known signification in our laws. It is used in opposition to *general,* and thus means a designating of a species or sort—a separation of a part from the whole. The 8th chapter of the revised statutes, part 3d, entitled "of proceedings in *special cases,*" affords a legislative exposition of the term, adopted nearly twenty years ago, and acquiesced in ever since. That chapter embraces the entire action of replevin; an action supposed to be known to the common law for at least five hundred years, and in use two centuries before the action of assumpsit, which is the creature of the statute. In the 3d article, title 2d, chap. 1, of part 2d " of powers," the legislature divides them into *general* and *special ;* and defines a general power to be when it authorizes the alienation in fee, by means of a conveyance, will, or charge of the lands embraced in the power to any alienee whatever; and a *special* power to be, 1st. When the person or class of persons to whom the disposition of the lands under the power is to be made, are designated ; and 2d. When the power authorizes the alienation, by means of a conveyance, will, or charge of a particular estate *less than a fee.* Thus the term special is applied when the persons or estate, less than the whole, which are the objects of the power, are *designated.* It is correctly so applied. The term *special* is obviously used in the same sense in title 1, chap. 4, of part 2d, "Of limited partnerships ;" in the 2d section of which is described the difference between *general and special* partners. It is used in a similar sense in the act relative to bills of exchange and promissory notes, in title 2d of the same chapter ; and the difference between a *general* and *special* endorsement and acceptance, in the law merchant, has long been known. We have the same distinction of the terms as applied to courts and terms of courts. Thus we have the general sessions and the special sessions ; the latter having only a

Beecher *v.* Allen.

portion of the power allotted to the former. We have also the *general* and *special* terms of the supreme court, the one being unlimited in its jurisdiction and the other restricted to particular sorts of business. Instances of this kind may be multiplied beyond number, but the foregoing are sufficient for the present purpose.

From what has been said we may deduce the conclusion that *special cases* in equity embrace such subjects of litigation, or of judicial cognizance, falling within the range of equity jurisdiction, less than the whole, as the legislature may prescribe. And we may also infer that the *special cases* of which the legislature is authorized to give the county courts original jurisdiction, by the first clause of the 14th section of article 6, embrace causes of action which were formerly redressed by actions at common law, but limited either with respect to the amount to be recovered or the residence of the parties. The term *special* is put in opposition to *general cases.* The latter embraces all causes of action of whatever amount, wheresoever and by whomsoever committed, and by whatever name described. This jurisdiction is by the 3d section of article 6th conferred upon the supreme court, which, under the constitution, is the only tribunal having general jurisdiction in law and equity. Any court on which a jurisdiction may be conferred over any portion of the *general cases* less than the whole, either with respect to the name of the remedy, the residence of the parties, the amount to be recovered, or the location of the matter in dispute, may appropriately be said to have jurisdiction in *special cases.* It is precisely this jurisdiction which the legislature, by the judiciary act of 1847, conferred upon the county court; and we think that this exercise of their authority was warranted by the constitution.

The objections which are raised to the foregoing construction of the constitution are derived from the supposed opinion of the prevailing majority in the convention which formed that instrument. (*See note in the first report of the commissioners on practice and pleadings, p. 43, et seq.*) This opinion is presumed to be adverse to the existence of the power, because the

convention refused to continue the common pleas courts, as they formerly existed, and adopted a system of thirty-two supreme court judges. (*Id.* 40.) Nothing can be more unsafe, as a rule of constitutional construction, than to repose on the private opinions of the individuals composing the convention. Some may have voted against an amendment of the section in question, proposing to give original jurisdiction to the county courts, upon the ground that it was already expressed with sufficient clearness. Some may have interpreted the clause strictly and closely ; others, from a different habit of thinking, may have given it a large and liberal meaning. It is not to be presumed that even in the convention the various clauses of the constitution were understood in the same sense by every member. Each member judged for himself; and the judgment of no one could or ought to be conclusive upon that of others. Even if it could be proved that every member in the convention entertained the opinion that under the term special cases, no action at common law was embraced, it would not alter the case. The constitution is not a charter granted by the delegates to the people. It is rather a system of government adopted by the people themselves; and is to be interpreted, not according to the views of particular delegates, but in the sense in which it was understood by the people. It has grown to be a proverb that the framer of a law is not always the best judge of its meaning. He may indeed remember his own peculiar intention ; but this will often blind him to the true interpretation of the law. (*See* 3 *Campbell's Lives of the Chancellors*, 331, *note*.) Some stress is laid by the commissioners on practice and pleadings, in their note, *supra*, upon the 5th section of the 14th article, as indicating the opinion of the convention, that the 14th section of article 6 did not authorize the legislature to confer original jurisdiction on the county courts. On this it may be remarked that the 14th article was temporary in its character, its object being merely to put the government in motion. It was of no consequence whether the suits pending in the common pleas which was abolished, were transferred to the county court, or the supreme court. The article called forth no dis-

Beecher *v.* Allen.

cussion, and the "*superfluous and,*" of which we have a history, (*id. p.* 42,) was not known by the voters to be an intruder. There is no doubt that the writer of the note before cited intended to exclude original jurisdiction in actions at law from the county courts; but his opinion, however much to be respected, cannot overthrow the effect of the words used, nor neutralize the influence of the practical interpretation by two successive legislatures.

II. We proceed now to inquire what department of the government is clothed with the requisite power to decide, in the first instance, what is meant by special cases. This is devolved upon the legislature, by the constitution itself. The third article of the constitution vests the legislative power of this state in a senate and assembly. There is no restriction or limitation of this power affecting the present question. By the 5th section of article 6, it is in express terms declared, that " the legislature shall have the same powers to alter and regulate the jurisdiction and proceedings, in law and equity, as they have heretofore possessed." The 14th section of the 6th article restricts the legislature from granting original civil jurisdiction to the county courts, except in such special cases as they shall prescribe; and thus by necessary implication, authorizes the legislature to confer upon those courts original civil jurisdiction in such special cases. The legislature is the body upon which is devolved the duty of putting the government in motion under the new constitution. Without its aid, the various departments of government would have remained forever in a state of suspended animation. No election could have taken place, nor could the means of supporting the government have been otherwise obtained. The courts could not have acted, until they were duly organized, and the appropriate subjects of jurisdiction assigned to them. It therefore necessarily devolves upon that body to decide first, what are special cases, and secondly, to prescribe which of these shall be assigned to the county courts. From the nature of things, confidence must be reposed somewhere. In the present instance it is intrusted to the people's own immediate representatives; and why should the exercise

of it be viewed with jealousy? A constitution which should contain an accurate detail of all the minute subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, and of the various subjects of jurisdiction of which its courts respectively may take cognizance, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind. It would probably never be understood by the public. Its nature, therefore, requires that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects be deduced from the nature of the objects themselves. (*See* 4 *Wheaton,* 407.)

The power to prescribe the "*special cases,*" is, in the present instance, absolute and unrestricted. It is not only the right, but the duty of the legislature to act in the premises. It must make the selection of *some* out of many *special cases,* to fulfil the mandate of the constitution. It must, therefore, according to the dictates of reason, be allowed to judge for itself and make its own selection. It is responsible to its constituents for the wisdom of its choice, but there is no other appeal. The fitness of the selection can never be determined in a judicial forum. It is as much within the control of legislation as the details of the election law, the law giving compensation to public officers, or any other administrative law. The legislature thus having the power of prescribing what are special cases and what are not, the more or less special, or whether or not of the character which particular members of the convention intended, can never enter as an ingredient into a judicial decision.

The learned commissioners on practice and pleadings, in their note, pages 41, 42 in their first report, insist that it was not the intention of the constitution to confer jurisdiction on the county courts for the trial of ordinary actions between party and party. They maintain that it was a cherished object of the constitution to have a common tribunal for the trial of all civil actions, except those cognizable by a justice of the peace. After quoting the language of the constitution, "The county courts shall have such jurisdiction *in cases arising in justices'*

Beecher *v.* Allen.

*courts, and in special cases,* as the legislature shall prescribe, *but shall have no original civil jurisdiction, except in such special cases,"* they remark, that if all the qualifying words of this provision restricting its jurisdiction were stricken out, it would read thus : "The county court shall have such jurisdiction as the legislature may prescribe." "These words," they say, "would place the whole subject of the jurisdiction at the disposal of the legislature, where the friends of a common pleas system in the convention desired it to be, and sought in vain to place it." They insist that the judiciary act of 1847 construes it in that way; and they maintain that if under *special cases,* jurisdiction of an ordinary action at law can be conferred upon the county court, "the qualifying words in the section have no meaning, and the provision would have precisely the same effect without as with them."

So far as the constitution is to be construed by its words, our views have already been expressed, and need not be repeated. But we think also the commissioners err, when they say, that the construction given to the section in question by the legislature of 1847, renders the qualifying words of no meaning. Without these qualifying words, it is conceded that the whole subject of jurisdiction would be at the disposal of the legislature without limitation or restriction. That body might then confer jurisdiction in *general cases* upon every subject of judicial cognizance. With these words, the power of the legislature is limited to such *special cases* as they may prescribe. The difference in construction between the section in the constitution with the qualifying words and without them, is precisely the difference between *special* and *general* cases. It is the difference between the exercise of a power, restricted to such limits as they in their wisdom may judge fit, and the exercise of a power without limitation or restraint. The convention, therefore, did no vain and idle act, when they inserted the qualifying words in question, and neither the legislature of 1847 nor that of 1848 transcended their power when they conferred upon the county court original civil jurisdiction in common law actions,

with the restrictions contained in the judiciary act in the one case, and in the code of procedure in the other.

The learned commissioners, in our judgment, repose too much on the presumed private intentions of the " prevailing majority" in the convention; as if the constitution was a mere grant from the convention, and the people its beneficiaries. We have already endeavored to show the fallacy of this reasoning.

It has been already remarked, that the legislature is clothed by the constitution with power to determine, in the first instance, the meaning of the term *special cases*. The same principle applies to every department of the government upon which any duty is devolved. It must decide, in the first instance, upon the circumstances under which its power is invoked, and whether, consistently with the constitution the act can be done. If, for instance, the executive is applied to for a pardon, he is not only authorized but required to decide for himself whether he has a constitutional power to grant it or not. If he grants it, in a case in which the power is not delegated to him, or against the regulations which the legislature, under the constitution may prescribe, the act may be a nullity. But there are many cases in which the decision of the executive, thus made, becomes final and conclusive, being from their very nature and character incapable of revision. Thus, should the executive grant a pardon, in a case within his constitutional power, but for reasons manifestly insufficient, the act would be legal, because there is no power to review it. So also in measures of a political or administrative character, where the supreme authority belongs to the legislative and executive departments, those measures cannot be re-examined elsewhere. Thus, the legislature, having the power of taxation, the question as to whether the tax should be one cent on the dollar, or two cents, can never become the subject of re-examination in any other tribunal. And yet, cases may readily be imagined, in which a tax may be laid, upon motives and grounds wholly beside the intention of the constitution. (*See* 1 *Story on Con.* 545, 546, § 374.) The case under consideration belongs to the same class of powers where a discretion is confided to the legislative

Beecher *v.* Allen.

department, with respect to the selection of subjects of jurisdiction, less than the whole, in which the decision of the legislature, thus made, is conclusive.

But when the question is of a different nature, and capable of judicial inquiry and decision, it admits of a different consideration. The decision there made, by the legislature or executive, whether in favor or against the constitutionality of the act, being capable, in its own nature, of being brought to the test of the constitution, is subject to judicial revision. It is in such cases, as we conceive, that the judiciary is made the final arbiter, provided by the constitution itself, to whose decisions all others are subordinate. An exemplification of this principle will be seen, should the legislature attempt to take the private property of a citizen, for public purposes, without compensation, contrary to section six of the first article of the constitution. In such case the citizen whose rights were invaded could invoke the aid of the judicial power to *prevent* the mischief, or to obtain redress after the mischief had been accomplished.

In conclusion, we entertain no doubt that the 30th section of the judiciary act of 1847, was a just exposition of the jurisdiction intended by the constitution to be conferred upon county courts, and that the legislature is the sole and exclusive judge of the subjects of jurisdiction thus to be assigned, provided such assignment is not of general and unlimited authority, but is special in its character.

The judgment, therefore, of the county court must be affirmed.

CADY, P. J. [after disposing of the other parts of the case, proceeded to discuss the constitutional question as follows :]

Another ground was urged on the argument, for reversing the judgment; to wit, that the county court had no jurisdiction of the cause, for the reason that the act of the legislature, professing to confer jurisdiction, was unconstitutional and void. An objection to a statute ought to be very obvious, to justify this court in pronouncing it void. By the 14th section of the 5th article of the constitution, it is declared that " the county courts shall have such jurisdiction in cases arising in justices' courts,

Beecher *v.* Allen.

and in special cases, as the legislature may prescribe ; but shall have no original civil jurisdiction, except in such special cases." It is very possible that the members of the convention supposed this clause as clear as a ray of light, and that no person of common understanding could fail to know what was intended by it. But we find not only men of common understanding, but able and experienced jurists, disagreeing as to its meaning. Then, what ought to be the interpretation ? That which will most restrain, or that which will give the largest liberty to legislative power ? There ought to be no limitation to the power of the legislature of an independent state, except what may be found in the fundamental law, and the great and eternal principles of justice, morality and religion.

What are special cases? To whom did the constitution delegate the power to determine what suits and proceedings might be known as special cases? The legislature was to determine of what special cases a county court should have jurisdiction, and on the 12th of May, 1847, they undertook to designate them, and amongst other special cases, they gave the county courts jurisdiction over actions of assumpsit when all the defendants reside in the county in which the action is commenced, and the damages claimed do not exceed two thousand dollars. That, as the legislature of 1847 understood the constitution, was a special case. It was distinguished from all others, that the defendants must all reside in the same county, and not more than two thousand dollars must be claimed. Who can undertake to say that the legislature of 1847 violated the constitution by calling that a special case ? If they are to be condemned as violators of the constitution, the legislature of 1848, and the commissioners of the code, must share the same fate.

Title four, § 33 of the code of procedure, enacts that " the county courts shall have jurisdiction in the following *actions* and proceedings." And what are they ? " For the foreclosure or satisfaction of a mortgage and the sale of mortgaged premises within the county." A suit or action in the court of chancery, for the foreclosure or satisfaction of a mortgage, and the sale of mortgaged premises," was as well known when the con-

Beecher v. Allen.

stitution was adopted, as the action of assumpsit. An action of assumpsit was prosecuted in order to get a judgment, and issue an execution to sell the debtor's personal and real estate, to satisfy the debt; and a suit for the foreclosure or satisfaction of a mortgage, or a sale of the mortgaged premises, is also to coerce the payment of a debt by the sale of a man's real estate; and the one is no more a special case than the other. The act of 1847 did not give to the county courts jurisdiction in all actions of assumpsit; nor does the law of 1848 give to those courts jurisdiction in all suits for the foreclosure of mortgages. The act of 1848, (the code of procedure,) gives to the county courts jurisdiction in suits or actions for the partition of lands in their respective counties. Suits or actions for the partition of lands, are no new inventions, and can no more be called special cases than any other actions. But when restricted to the lands in a particular county, they may be called special cases. Partition was a regular real action, in which there were two judgments, and it can no more be called a special case than an action of assumpsit, or any other action. It is true, that the mode of proceeding in partition has been changed; and so it has in all other actions. And if by changing the mode of proceeding in partition, it is now a special case, the great change made in proceedings in all other actions, has transformed them all into special cases; and the legislature of 1847, no more exceeded its power by giving jurisdiction to county courts in actions of assumpsit when all the defendants reside within the jurisdiction of the court, and the damages demanded do not exceed two thousand dollars, than the legislature of 1848 did by giving to the same courts jurisdiction in partition, when all the lands of which partition is sought are in the same county.

The judgment of the county court must be affirmed.

PAIGE, J. concurred in the result of the foregoing opinions.

HAND, J. not having heard the whole argument, gave no opinion.

Judgment affirmed.