## ARNOLD *v.* REES.

The statute ( *Code of Procedure,* § 30 ) conferring upon the county court juris-
diction of actions for the foreclosure of a mortgage and the sale of mortgaged
premises, situated within the county, is constitutional.   Such a proceeding
is a special case within art. 6, § 14 of the constitution.

APPEAL from the Supreme Court.   The action was for
the rent of premises, in the city of Brooklyn, occupied by
the defendant under a lease in writing.   The answer admit-
ted the agreement to pay the rent, but averred that at the
time of making the lease the demised premises were subject
to a mortgage, which, during the term, was foreclosed by
action in the County Court of Kings county, a sale had under
the judgment of the court, at which one Blake became the
purchaser, and, having perfected his title under the fore-
closure, the defendant attorned to him and paid him the
rent.   The plaintiff demurred to the answer on the grounds
that the County Court had not jurisdiction of the action to
foreclose the mortgage; that its judgment and the sale under
it were void, and the attorning of the defendant to Blake
was therefore of no effect.   The question was upon the
constitutionality of acts conferring jurisdiction in foreclosure
cases upon the County Court.   The demurrer was sustained
at special term and the plaintiff had judgment, which, having
been affirmed at general term in the second district, the
defendant appealed to this court.

*A. Thompson,* for the appellant.

*Seabury Kissam,* for the respondent

COMSTOCK, J.  The constitution (*art.* 6, § 14) provides
that "the County Court shall have jurisdiction in cases
arising in justices' courts and in special cases as the legisla-
ture may prescribe, but shall have no original civil jurisdic-

tion except in such special cases." Another clause in the same section declares that "the legislature may confer equity jurisdiction in special cases upon the county judge." Acting upon these provisions, the legislature has attempted to confer upon the County Courts of this state original civil jurisdiction in various specified or enumerated cases, embracing in the number the foreclosure of a mortgage, the sale of mortgaged premises situated within the county and the collection of any deficiency remaining unpaid after the sale. (*Code of* 1852, § 30.) The question now is upon the validity of this exercise of legislative power, and our duty is to determine in its favor unless we are plainly required by the language of the constitution to do otherwise. It is believed that the jurisdiction thus conferred upon the County Courts has been exercised in numerous cases. If we determine against it, many titles will doubtless be overthrown, and great mischiefs will be likely to follow from such a decision.

In the mode of interpreting the constitution adopted by those who deny the power which the legislature has thus attempted to exercise, the words "special cases" refer to an inherent, unchangeable distinction between the cases thus designated and all others; a distinction supposed to exist somewhere in the very nature of legal controversies, which, being recognized by the fundamental law, is altogether beyond the reach of the legislative power. It manifestly devolves upon those who place this reading upon the constitution to explain and define in some intelligible manner what are and what are not special cases in their essential nature and according to the distinction referred to. If this cannot be done, then we are bound to inquire whether the words of the constitution do not admit of some other interpretation which will uphold the jurisdiction in question.

In the case of *Kundolf* v. *Thalheimer* (2 *Kern.*, 593), this court decided that the legislature could not confer upon the county courts jurisdiction in the action for assault and battery. In the opinion of Chief Judge GARDINER, delivered

in that case, the " special cases" of the constitution are supposed to refer to a large class existing when the constitution was adopted, many of which, he observed, would be found in chap. VIII, part 3, of the Revised Statutes, entitled " Of proceedings in special cases." It was sufficient, he added, "that such a class of cases was distinctly recognized in our statutes, and that there was, therefore, a legal subject *in esse* to which the language of the constitution would apply." Resorting thus to the existing statutes of the state for a definition of special cases, and assuming that the constitution referred to those cases and others of the same kind created by later statutes, he arrived at the conclusion, in which the court concurred, that jurisdiction in common law actions of debt, trespass, &c., could not be given to the county court. I believe no other attempt has ever been made to define what are special cases under the interpretation of the constitution which we are now considering.

We have now, since the change in pleadings and practice, no common law actions; and on some future occasion, if the question shall again arise, it may be deemed advisable to inquire whether the constitution necessarily excludes the power of the legislature to confer jurisdiction on those courts over all the causes of action, where the appropriate remedy was by a common law suit at the time the constitution was adopted. In view of the present question, it will be useful now to look at the so-called special cases in the Revised Statutes, to which it is supposed the constitution had a particular reference. Chapter VIII is entitled " Of proceedings in special cases," and is divided into seventeen titles. The first of these titles relates to suits by poor persons; the second to proceedings by and against infants; the third embraces suits by and against executors and administrators; the fourth relates to suits by and against public bodies and the persons representing them, such as supervisors, commissoners of loans, of common schools and highways, overseers of the poor, &c., &c.; the fifth to ac-

Arnold *v.* Rees.

tions for penalties, forfeitures, &c.; the ninth to the action of ejectment for the non-payment of rent; the twelfth to the action of replevin, and the seventeenth contains a variety of provisions concerning suits and civil proceedings in general. Other titles in the same chapter relate to proceedings peculiar in their nature and form, such as forcible entries and detainers, admeasurement of dower, the draining of swamps, &c. In this enumeration of "special cases," therefore, we find no distinction between common law actions and suits or proceedings of a different character. The poor person, on being allowed to prosecute *in forma pauperis*, would bring his action at common law, or he might file his bill in equity. His suit, so far from being a special case, in any other sense than that of being specially enumerated, or made the subject of some particular provisions of law, might embrace every subject in the whole range of legal and equitable controversies. So in regard to suits by and against infants, executors and administrators, public bodies and the persons representing them. These special cases were cases at common law, as much so as the action of assumpsit on a note; but there was some provision of the statute in relation to each of them, required by the condition, the age, or the representative character of the party. Ejectment and replevin were certainly common law remedies, and of a very ancient date; yet, as we see, they were recognized as special cases at the adoption of the constitution, because upon them also some special provisons of law were engrafted.

It would seem impossible, therefore, to hold that the constitution, in providing for jurisdiction in special cases to be prescribed by the legislature, has excluded all the remedies which were pursued by actions at common law   The reasoning which preceded, I do not say sustained, the decision of the court in the assault and battery case of *Kundolf* v. *Thalheimer*, as we have seen, does not justify such a conclusion. Indeed, if such an interpretation be adopted, then we

Arnold *v.* Rees.

must hold that the constitution limits the jurisdiction to proceedings of a summary and peculiar character, which are not instituted or conducted in any respect according to the course of the common law. If this had been the intention of those who framed and adopted the constitution, I think more appropriate and precise language would have been used. If the design had been to exclude all subjects of controversy which admitted of the usual and customary remedies, and to include those only where the remedy was peculiar and summary, no one could have been at a loss for words in which to express that design. There is and always has been a known distinction between " cases" at law or in equity, and " proceedings" of a special character which do not take the form of an action, but are instituted and carried on in some peculiar and anomalous mode. It must be conceded, I think, that the language of the constitution was not well chosen, if it was intended to mark as the subjects of jurisdiction these proceedings only. We certainly ought to look for far greater clearness and precision in expression, before we overrule the legislative interpretation; an interpre· tation which, it ought to be observed, was adopted at the very first session after the constitution had been accepted by the people, and which has been continued ever since that time. (*Laws of* 1847, 328; *Codes of* 1848, 1849, 1851, 1852.)

It is quite certain, then, according to all the definitions ever attempted of the terms used in the constitution, that the county courts can take jurisdiction of some of the cases or causes of action which were cognizable at common law. If, therefore, all such cases are not excluded, is any one of them, provided the legislature sees fit, by a special enactment, to define the case and confer the jurisdiction? This inquiry I shall not now pursue, because the decision of this court, in the case mentioned, stands directly in the way of such a discussion.

In a more precise view of the present question, the inquiry is, whether any cause of controversy or suit, in respect to

which, at the adoption of the constitution, there was a remedy by bill in equity, can now be brought within the jurisdiction of the county courts. Here we shall find still greater difficulties in the way of an interpretation which restricts the power of the legislature. Those who are able to suggest, if they cannot define, the distinction between general and special cases at law, as depending on the inherent quality of the cases themselves, must fail when they attempt to do so in respect to cases in equity. No such distinction ever existed, nor does it now exist. On the contrary, in the sense of the term special, now considered, it qualifies the entire jurisdiction of courts of equity. The system of equity jurisprudence has arisen out of the special and particular exigencies of society. It was devised, it has increased and been matured through many ages, mainly to relieve and mitigate the rigor of the common law, which, through the universality of its principles and the unyielding nature of its forms, failed to do justice in special cases and particular emergencies. The very judgments of courts of law, pronounced upon certain fixed rules of universal application, by which those courts were bound, were relieved against in equity, under the peculiar and extraordinary circumstances of the particular case. The conditions of fact under which such relief would be given, are of great variety, and no attempt to reduce them to uniformity in principle or in statement could be successfully made. Who would hesitate to pronounce such a case "special," when speaking of its nature and quality? Illustrations of cases in equity, special in this sense, according to the most accurate and precise use of language, might be given almost without number. A very obvious one may be found in the bill for specific performance of a contract for the sale and purchase of lands, where the vendee has failed to perform on his part within the time required by his agreement. Equity will still preserve his rights and decree performance in his favor, if he can allege special and peculiar facts which ought to relieve

Arnold *v.* Rees.

him from the forfeiture, such as continued occupation, valuable improvements, payments of money, acquiescence on the part of the vendor, &c. In legal as well as popular phrase, such a case is special, and in its nature it is eminently of that character. What authority, then, have we for saying that the convention which formed and the people who adopted the constitution, in conferring jurisdiction on the county courts, intended to exclude a case exactly described in the very words of the grant?

If we adopt the conclusion that all causes which were cognizable by bill in equity are excluded by the terms of the constitution, then there was no subject to which those terms could be applied, except the peculiar cases where the proceeding was not by bill, but a more summary remedy was provided. These, it will be found, were very few in number; so few, indeed, that they could have been easily enumerated if it had been intended to confine the jurisdiction to cases of this description. Some of these, however, it is well to observe, were quite as difficult and complicated as any other in the whole range of equity jurisdiction. This will be quite evident when we consider that the summary jurisdiction of the Court of Chancery, exercised upon petition merely, embraced corporations, their dissolution in certain cases, the sequestration and distribution of their effects, and the right to restrain, by injunction, the exercise of their powers. In proceedings of this character, rights of the greatest importance are frequently involved, and the questions are often peculiarly complicated and difficult. And yet, according to the construction of the constitution which I am endeavoring to refute, the county court can take jurisdiction of such proceedings, while it cannot of the simplest case of foreclosure. No practice can be found of foreclosing a mortgage upon petition instead of bill, and therefore the legislature is powerless, so the argument runs, to confer the jurisdiction. I do not believe this to be a reasonable interpretation.

What, then, are the special cases in equity of which jurisdiction can be given to the county court? To answer this question we must consider not only the fair import of the language used, but also the other judicial arrangements of the constitution, and the terms employed in making those arrangements. In the judiciary article, provision is made for a Supreme Court, with "*general* jurisdiction in law and equity," and in the same article we find the clauses concerning the county court and the county judge. Now, the words "general" and "special" are manifestly used in senses precisely opposite. The idea represented in one of these terms is the very one designed to be excluded by the use of the other. If, therefore, the special jurisdiction of the county court resides in the nature and quality of the cases in which it is to be exercised, irrespective of legislative enumeration, it follows that the general jurisdiction of the Supreme Court resides in those of an opposite nature and quality. If the word "special" limits the power of the legislature in one direction, the word "general" limits it in another. If the county judge cannot receive jurisdiction in any case where the remedy was by bill in equity, because it is not a special case, the Supreme Court cannot entertain it in a summary proceeding, because this is not a general case. In short, neither one of these tribunals can take any share in the jurisdiction which is given or allowed to the other. We are thus brought to a conclusion which we know to be false. We know that the powers of the Supreme Court are not thus limited, and we must therefore reject the interpretations which lead to such a conclusion.

Why, then, is the jurisdiction of the Supreme Court denominated "general?" Plainly, because no legislative specification of the subjects of that jurisdiction is required. That of the county court is "special" in a sense directly the opposite; that is to say, the cases in which that court may receive its jurisdiction must be specified and defined by the legislature, and hence they are called "special"—the

Arnold *v.* Rees.

terms "general" and "special" being used to denote the opposite qualities of the two jurisdictions. When we are certain that we have the true meaning of one of them, we cannot be mistaken as to that of the other. If we know that the general nature of the jurisdiction of the Supreme Court has no reference to a distinction in the quality and character of controversies, then we may also be certain that the special jurisdiction of the county court rests on no such distinction. It is special, because it must be specially conferred by legislative act. The cases in which it may be exercised must have a special definition, and nothing can be taken without such definition or contrary to it.

The question before us was, I think, in its substance and nature, involved in the recent decision of this court in *Doubleday* v. *Heath* (16 *N. Y.*, 80). That was a suit in one of the county courts for the partition of lands. It was, therefore, a case in equity, according to the distinctions between law and equity existing at the adoption of the constitution. It is true that partition could be had by petition and proceedings of a summary character in the common law courts (2 *R. S.*, 315). But the remedy by bill in equity was as ancient as the time of Queen ELIZABETH. In this state, it was modified by certain statutory provisions, but still the remedy existed and was in frequent use down to the constitution of 1846, and after that time until the Code of Procedure was enacted. Under the Code, the action for partition has now taken its place, modified, as the suit in equity was, by the statutes referred to. In holding, as this court did, that jurisdiction could be given to the county court in a suit for the partition of lands within the county, it was necessarily determined that some matters, which were formerly remediable by bill in chancery, could be brought, by act of the legislature, within that jurisdiction. That point being conceded, where does the power stop? Is it limited by another distinction to be drawn between cases in equity where the remedy by bill has been in some degree

modified by statutory regulation, and other cases in which there has been no interference by legislation? Are the cases in one of these classes special, and the other not within the meaning of the constitution? This cannot be the distinction which the constitution or the people had in view. But even if it were, we find that the remedy by suit in equity for the foreclosure of a mortgage had been modified by a variety of statute regulations, some of which were of great importance in the administration of that remedy. (2 *R. S.*, 191.) I see no solid ground, therefore, for distinguishing between the case of partition, already decided by this court, and the one now before us.

For all the reasons suggested I am of opinion that the legislature can confer jurisdiction on the county courts, in suits for the foreclosure of mortgages upon lands within the county, and the sale of mortgaged premises.

The judgment of the Supreme Court should, therefore, be reversed and judgment rendered for the defendant on the demurrer, with leave to go to trial on the issue of fact.

ROOSEVELT, J.  The question raised on this appeal relates to the validity of the act authorizing mortgage foreclosures in the County Courts. Had it not been for the action of the Court of Appeals in *Kundolf* v. *Thalheimer* (2 *Kern.*, 595), I should have supposed the point admitted of no doubt.

"There shall be a Supreme Court," says the constitution, "having *general* jurisdiction in law and equity." And then, after providing for the election of a county judge, it declares that " the County Court shall have such jurisdiction in cases arising in justices' courts and in *special cases* as the legislature may prescribe; but shall have no original civil jurisdiction except in such special cases." Reading these provisions together, they are tantamount, as it seems to me, to saying that the Supreme Court shall be a court of general jurisdiction, in all cases, by force of the constitution itself; whereas the County Court shall have no jurisdiction in any case unless

Arnold *v.* Rees.

specially given by law, and then only in the special cases which the legislature may enumerate, and in such manner and to such extent as the legislature may prescribe. At the date of the constitution the terms "special cases" or "special proceedings," as technical expressions, were unknown. They had no precise, well defined meaning. It is not to be presumed, therefore, that the convention, in using these terms, especially when inserted in a provision obviously framed merely to control the jurisdiction of inferior courts, meant a limitation on the power of the legislature. But admitting the constitutional provision to be dubious, which certainly is the most that can be contended for, we are then to apply the well settled principle that acts clothed with the forms of law are not to be set aside on dubious grounds. Something is due to the judgment of the legislature, enough at least to decide where judges disagree. The presumption is in favor of the validity of the law. "Plenary power," say the court in *The People* v. *Draper* (15 *N. Y.*, 532), "plenary power in the legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden." Express words of course are not indispensable. There must, however, at least be a necessary implication, an implication so prominent and marked in its character as to be readily visible to the ordinary eye and not requiring any microscopic powers for its discovery. Courts are not to be astute in detecting supposed legislative errors or disregard of constitutional restraint. There is no impeachment in the present instance, even if such a suggestion were ever admissible, of the motive of the legislature, no suspicion of attempted evasion. In such a case I should pause long before reversing the deliberate decision of a coördinate department of the government.

The judgment of the court below ought therefore to be overruled.

PRATT, J., delivered an opinion to the same effect as that of COMSTOCK, J.; JOHNSON, Ch. J., and DENIO, J., were for reversal, upon the ground that the proceeding for the foreclosure of a mortgage and the sale of the mortgaged premises, under our statutes, is an exceptional and peculiar case, in which the jurisdiction of the county courts is to be upheld for substantially the same reasons assigned in respect to the action for partition of lands in *Doubleday* v. *Heath* (16 *N. Y.*, 80); SELDEN, J., expressed no opinion; HARRIS and STRONG, Js., dissented, the former delivering the following opinion:

HARRIS, J. (Dissenting.)   The debates of the convention show, what is still within the recollection of those who were familiar with the proceedings of that body, that upon no one subject relating to the structure of the judiciary system was there a greater diversity of views and opinions than upon the question whether county courts should be established, and, if so, what should be the extent of their jurisdiction.   It having been determined by a majority of delegates that such courts should form a part of the scheme to be proposed, one class of delegates were in favor of confining the power of these courts within very narrow limits. Some were even for limiting their jurisdiction to a review of decisions made in justices' courts.   Another class were in favor of a much more enlarged jurisdiction.   It was finally agreed that, in addition to the jurisdiction in cases arising in justices' courts, the legislature should be authorized to confer upon these courts jurisdiction in such special cases as it should think fit.   Had the convention itself been required to define for itself the meaning of its own terms, it would have been found difficult, if not impracticable. Each party seemed willing to adopt the section, vague and indefinite as it was, and take the risk of the construction which might afterwards be given to it, rather than attempt to make it more definite and explicit.   Just as the vote

Arnold *v.* Rees.

upon the adoption of the section was about to be taken, Mr. Patterson, a prominent member of the convention, said: "the phrase *'special cases'* was interpreted differently by different gentlemen; one saying the legislature, under it, could give no original jurisdiction to these courts, while another contended that it could be given to any extent. They should have words which, at least, the convention itself could understand." But it was thus turned over by the convention to the legislature and the judiciary to settle the boundaries of the jurisdiction of county courts. The task was not easily performed. Legislators and judges have entertained quite as great a diversity of views upon the question as did the delegates who composed the convention. The consequence is, that, though more than ten years have elapsed, the limits of the jurisdiction of county courts are yet undetermined.

Some judges, inclined to a liberal construction, have been disposed to define the word "special," as it is found in the section of the constitution under which the question arises, to mean "specified." These understand the framers of the constitution to have intended to leave it discretionary with the legislature to confer upon county courts jurisdiction in such actions, suits and proceedings as in its judgment the public exigencies might require. Adopting this mode of construction, it would be competent for the legislature to withhold from these courts all jurisdiction beyond a review of cases arising in justices' courts, or to confer upon them a jurisdiction coördinate with that of the Supreme Court.

It is, in my judgment, a fatal objection to this mode of construction, that it fails to give any effect whatever to a most significant and emphatic word, which those who prepared the constitution have been careful to insert once and again in the provision under examination. If this construction is to prevail, the constitution is made to declare that county courts shall, in addition to their jurisdiction in cases arising in justices' courts, have jurisdiction in such

other cases as the legislature may prescribe. No effect whatever is given to the word "special." It becomes wholly useless and unmeaning. Without it, the legislature would be required to specify and prescribe the cases in which county courts should have jurisdiction; and with it, according to this mode of construction, there is no limit to the power of the legislature thus to specify and prescribe, and thereby expand the jurisdiction of these courts. Such a construction of the provision in question was adopted by the Supreme Court, and vindicated, in an elaborate argument by two very distinguished judges, in *Beecher* v. *Allen* (5 *Barb.*, 169).

Another, and, as I think, a more just and reasonable mode of interpreting the language found in the provision under consideration is, to allow the word "special" to have its natural and ordinary meaning and effect, as a word of limitation, thereby restricting the legislature in what would otherwise be its unrestricted power to confer jurisdiction upon county courts. This was the rule of interpretation adopted by this court in *Kundolf* v. *Thalheimer* (2 *Kern.*, 593), where it was held that an action for an assault and battery was not a "special case," within the meaning of the constitution, and that the legislature, in attempting to confer upon county courts jurisdiction over such an action, had transcended its own powers.

When the constitution was adopted there were, and perhaps it may properly be said there are yet, two kinds of general jurisdiction, to one or the other of which every case of judicial cognizance belongs. There was legal jurisdiction and equitable jurisdiction. There were cases cognizable in law and cases cognizable in equity. In defining the jurisdiction of the Supreme Court, it was declared that it should have general jurisdiction both at law and in equity. Then, when the framers of the constitution came to provide for the jurisdiction of the county court, they first declared that it should have jurisdiction, subject to the control of the legis-

Arnold *v.* Rees.

lature, in all cases arising in justices' courts. They then proceeded to declare that it should also have jurisdiction in special cases, as the legislature might see fit to prescribe, and then further to declare the same thing in respect to " special cases" of equity jurisdiction. The same restriction was imposed upon the legislature in respect to cases of equitable jurisdiction as in cases of legal cognizance. If the legislature could not confer upon county courts jurisdiction in ordinary actions at law, neither could it in ordinary suits in equity. As it has been held that the legislature had no such power in respect to ordinary actions at law, so it must be held in respect to ordinary suits in equity. " There can be no presumption," says Mr. Justice S. B. STRONG, in *Hall* v. *Nelson* (*23 Barb.*, 100), " that the convention which framed the constitution intended to authorize the delegation to the county judge of a more extensive jurisdiction in equitable suits than in actions at law."

There is a great variety of special proceedings, exclusive of actions at law and suits in equity, with which every lawyer is familiar, and of which some judicial tribunal must have jurisdiction. The Court of Common Pleas, for which the present county court is, to some extent, a substitute, was, when the constitution was framed, a favorite depository of this kind of special jurisdiction. Mr. Jordan, who was a distinguished member of the constitutional convention, in advocating before that body the continuance of the county court, enumerated twenty-five distinct cases of what he called " *miscellaneous duties*" performed by that court and its judges, in addition to its ordinary jurisdiction in civil actions. Some of these " miscellaneous duties" were, in their nature, matters of legal cognizance, and others more appropriately belonged to a tribunal of equitable jurisdiction. For this large class of " special cases," and others of a like miscellaneous character, which might from time to time arise, the convention felt it to be necessary to make some provision. When it was determined that a new county court

should be organized, whose primary business it should be to review cases arising in justices' courts, it was also thought fit to authorize the legislature, in its discretion, to confer upon this court jurisdiction in these special or miscellaneous cases. This I understand to be the object and import of the provision in the constitution now under examination. The term "special cases" was used to designate that large and diversified class of legal and equitable proceedings, of which, as distinguished from proceedings which are well known and well defined as actions at law and suits in equity, jurisdiction must be vested somewhere, to make a complete judicial system.

We are still left to inquire whether a proceeding for the foreclosure of a mortgage and the sale of the mortgaged premises is a suit in equity of which a county court cannot take jurisdiction, or a special case of which jurisdiction may be conferred upon the county court. The legislature has included this proceeding among the special cases of which the county court should have jurisdiction. But, as was well said by Judge DENIO, in delivering the opinion of the court in *Doubleday* v. *Heath* (16 *N. Y.*, 80), "an ordinary action, in use when the constitution was framed, cannot be made a *special case* by calling it so." In the case just cited, the jurisdiction of the county court, in a proceeding for the partition of lands, was sustained, but it was upon the express ground that the proceeding was "a special statutory proceeding, instituted to take the place of the tedious action by original writ out of chancery." In England, suits for partition, under a statute enacted for that purpose, had become regular actions. In alluding to the English practice, Judge DENIO says: "If this had been continued in this state, and the present action was of that character, I do not see how it could be considered a *special case* within the constitutional provision."

The practice of bringing a suit in equity for the foreclosure of a mortgage has long existed. There is no more familiar branch of equity jurisdiction. There is nothing in

Arnold *v.* Rees.

such a suit more peculiar or extraordinary than in any other suit in equity. In a limited sense, every suit in equity is "special." For while, in suits at law, the judgment is confined to the recovery of money or property, it is the distinctive feature of a suit in equity that the judgment is adapted to the special circumstances of each particular case. But a suit to foreclose a mortgage is no more a special case than a suit to compel the specific performance of a contract or to avoid a fraudulent conveyance. If jurisdiction in a suit to foreclose a mortgage can be conferred on the county court because it is a special case, I know of no other suit of equitable cognizance of which the same thing might not be said with equal propriety. To hold that such a suit is a special case, within the scope and meaning of the phrase, as used in the constitution, and that therefore the legislature had the power to invest the county court with jurisdiction in such a case, would, in my judgment, be equivalent to a declaration that the legislature may, in its discretion, confer such jurisdiction upon county courts in all equity cases. A construction involving such a consequence can but be erroneous. A suit for the foreclosure of a mortgage is as common in a court of equity as an action for assault and battery in a court of law. If the latter cannot be regarded as a special case within the meaning of the constitution, the same rule of interpretation must also exclude the former. I am, therefore, of opinion that the legislature, when it declared that the county court should have jurisdiction in cases for the foreclosure or satisfaction of mortgages, exceeded its constitutional powers.

The judgment of the Supreme Court, therefore, should be affirmed.

Judgment reversed, with leave to plaintiff to withdraw demurrer and go to trial on issue of fact.