## RICKS *et al. v.* REED.

THE Act of January 24th, 1860, amendatory of the Act of 1856, regulating the mode of settling claims to lots in town sites situated on public lands in Humboldt county, authorizing certain proceedings before the County Judge or the corporate authorities, as the case might be, to determine the rights of contesting parties to such lots, and giving the County Court jurisdiction on appeal from the action of the corporate authorities, is constitutional.

The jurisdiction vested in the County Court by the Act of January 24th, 1860, is not strictly appellate, but original. The right of the parties to the lots, under the rules and regulations prescribed by the Legislature, is the subject of consideration and determination by the Court, without reference to the evidence presented to the corporate authorities, and the whole matter is investigated anew.

When the act says that in case any claimant shall feel aggrieved by the decision of the Trustees he may take an appeal to the County Court, and requires the proceedings there to be by complaint, answer or demurrer, and in conformity with the rules applicable to actions in Courts of record, it only means that if the claimant be dissatisfied with the decision of the Trustees he may have his right investigated and determined in an action brought against the successful claimant in the County Court.

The action authorized before the County Court is only a mode provided for testing before one of the regularly constituted tribunals of the country, the conflicting rights of adverse claimants to the town lots under the Acts of Congress and the legislation of the State.

The mere use of the word *appeal* in the act does not make the jurisdiction of the County Court appellate. The substance and intent of the whole proceeding authorized by the statute must be looked to in determining the nature of the jurisdiction in such cases.

The proceeding before the corporate authorities of the town, under the Act of 1860, is a "special case" within article six, section nine, of the Constitution. It is a purely statutory proceeding, commenced and prosecuted for the ascertainment of a particular fact to guide the corporate authorities in the execution of the trust devolved upon them under the act, and not an ordinary action at law or equity, nor conducted according to the forms of such action.

The proceeding in the County Court, on appeal from the action of the corporate authorities, by complaint, answer or demurrer, takes the form of a regular action; but still this proceeding also is a "special case" within the Constitution, because marked by one peculiarity which distinguishes it from ordinary actions at law or equity, to wit: that the parties—the corporate authorities or Board of Trustees in the present case—who are to be governed by the judgment of the Court, are not parties litigant before it, or parties to the record. They do not appear at all, and yet must obey and carry into effect the decision of the Court. The proceeding is in effect only an inquisition through the form of a regular action, like the proceeding before the corporate authorities for the ascertainment of a particular fact, upon which, when once judicially

Ricks *v.* Reed.

ascertained, the corporate authorities must act independent of any volition on their part.

The Acts of Congress authorizing the County Judge or corporate authorities to make entry of the public lands occupied as town sites "in trust for the several use and benefit of the occupants thereof, according to their respective interests," did not intend to give the benefits of the entry to mere temporary occupants of particular tracts at the date of the entry, without reference to the character of their occupancy, and thereby, in many instances, deprive the original *bona fide* settlers of their premises and improvements in favor of those who had by force or otherwise intruded upon their settlement; but the intention was that the original and *bona fide* occupants should be the recipients of the benefits of the entry to the extent, at least, of their interests—that is, of their actual occupancy and improvements.

The fifth section of the Act of 1855, relative to the disposal of lots in towns on public lands in Humboldt county, as amended by the Act of 1856 (Statutes 1856, 76) prescribing the evidence necessary to establish the title or right of the claimant to the lots, is constitutional.

The legislation of this State is directed to carry into effect the intention of the Acts of Congress; and the provision in the fifth section of the Act of 1856, that any person who has been in peaceable possession of a lot one year previous to the passage of the Act of 1855, entitled "An Act to Provide for the Disposal of Lots in the Towns and Villages on the Public Lands in Humboldt County," and has improved the same, shall be deemed to have the better right to said lot, was designed to prevent the right of the original occupants and locators from being preserved without continued occupancy, and this provision is constitutional.

Where the complaint, filed in the County Court by the party appealing from the decision of the corporate authorities under the Act of 1860, alleges that plaintiffs derive title to the lot claimed from one of the original occupants and locators of the town, the name of such original occupant and locator should be given, so as to direct the attention of the defendant to the particular fact to which evidence would be offered.

Where to such complaint defendant sets up, among other things, that in the year 1855 the premises were in the peaceable possession and occupancy of one Duff and were improved by him; that afterwards, in January, 1856, defendant, by permission and consent of Duff, entered upon possession of the lots and improved them, and has since then continued in the actual and peaceable possession and occupancy thereof; and that the premises were conveyed to plaintiffs, by said Duff, by deed executed on the thirtieth of August, 1859 : *Held,* that these allegations were properly stricken out, on motion of plaintiffs, as irrelevant and immaterial matter, because the possession and improvement of Duff in 1855 did not confer a right superior or equal to that of the original occupant through whom plaintiffs claimed, as under the Act of 1856, the possession, to confer a superior right, must have preceded the Act of April, 1855, by at least one year.

Where the complaint in the County Court, under the Act of 1856, alleges that plaintiffs claim title to the lots under the original occupants and locators of the town, and on the trial plaintiffs proved that one Wilson was one of such

original occupants and locators, and that he took up and occupied a tract of public land, at the time unoccupied, containing about one hundred and sixty acres, embracing the lot in controversy, and then traced title, by deed, from Wilson to one Crosier, in December, 1850, and from Crosier to themselves, in May, 1853 ; and defendant then offered in evidence a contract entered into in May, 1850, between two companies styling themselves respectively The Mendocino Exploring Company and The Union Company, by which the members of the first named company agreed to locate and secure three quarter sections of land opposite to the same number of sections selected by the latter company, and that the six quarter sections when surveyed should form a site for the town of Eureka, and that the town when laid out should be allotted to each member of both companies in equal proportions ; and offered to prove that Wilson, the plaintiffs' grantor, was a member of the Union Company, and in pursuance of the contract in question and in trust for the equal benefit of the parties thereto, located the land described in his conveyance to Crosier, and that at the date of this conveyance, Ricks, one of the plaintiffs, knew of the existence of the contract, and the fiduciary capacity in which Wilson acted : *Held*, that such contract and the evidence offered in connection with it were properly excluded on the objection of plaintiffs ; that if Wilson sold the claim located in violation of the trust reposed in him by the companies, it was matter for them to complain of ; and as defendant did not claim under or in privity with them, he was not in a position to call in question the good faith of the acts of their agent.

*Held, further,* that as there is no evidence that Crosier, when he took the conveyance from Wilson, had any knowledge of the relation of the latter to the companies, he was, so far as appears from the record, a *bona fide* purchaser for a valuable consideration, and therefore took the claim freed from any secret trusts.

*Held, further,* that defendant cannot object to the deeds from Wilson to Crosier and from Crosier to plaintiffs, that they were not properly acknowledged or recorded, because he does not claim under Wilson—there being no question as to the due execution of the deeds.

A deed duly executed, though not properly acknowledged or recorded, passes the grantor's interest, except as to subsequent purchasers from him in good faith and for valuable consideration.

APPEAL from the judgment of the County Court of Humboldt.

This is an action to determine between the conflicting claims of the parties to certain lots situated in the town of Eureka, in the county of Humboldt, under the Acts of Congress and of the Legislature of the State, which are mentioned in the opinion of the Court.

The following are the sections of the Acts of Congress mentioned which bear upon the case :

Act of Congress of September 4th, 1841, entitled "An Act to Appropriate the Proceeds of the Sales of the Public Lands, and to Grant Preëmption Rights."

" SEC. 10. *And be it further enacted,* That from and after the passage of this act, every person being the head of a family, a widow, or single man, over the age of twenty-one years, and being a citizen of the United States, or having filed his declaration of intention to become a citizen, as required by the Naturalization Laws, who, since the first day of June, A. D. 1840, has made, or shall hereafter make, a settlement in person on the public lands to which the Indian title had been, at the time of such settlement, extinguished, and which has been, or shall have been surveyed prior thereto, and who shall inhabit and improve the same, and who has or shall erect a dwelling thereon, shall be and is hereby authorized to enter with the Register of the Land Office for the district in which such land may lie, by legal subdivisions, any number of acres, not exceeding one hundred and sixty, or a quarter section of land, to include the residence of such claimant, upon paying to the United States the minimum price of such land, subject, however, to the following limitations and exceptions: No person shall be entitled to more than one preëmptive right by virtue of this act; no person who is the proprietor of three hundred and twenty acres of land in any State or Territory of the United States, and no person who shall quit or abandon his residence on his own land to reside on the public land in the same State or Territory, shall acquire any right of preëmption under this act; no lands included in any reservation, by any treaty, law, or proclamation of the President of the United States, or reserved for salines, or for other purposes; no lands reserved for the support of schools, nor the lands acquired by either of the two last treaties with the Miami tribe of Indians in the State of Indiana, or which may be acquired of the Wyandot tribe of Indians in the State of Ohio, or other Indian reservation to which the title has been, or may be extinguished by the United States, at any time during the operation of this act; no sections of land reserved to the United States, alternate to other sections granted to any of the States for the construction of any canal, railroad, or other public improvement; no sections, or fractions of sections, included within the limits of any incorporated town; *no portions of the public lands which have been selected as the site for a city or town;* no parcel or lot of land actually settled and occupied for the purposes of

Ricks *v.* Reed.

trade, and not agriculture ; and no lands on which are situated any known salines, or mines, shall be liable to entry under and by virtue of the provisions of this act.   And so much of the proviso of the Act of twenty-second of June, 1838, or any order of the President of the United States, as directs certain reservations to be made in favor of certain claims under the treaty of Dancing Rabbit Creek, be and the same is hereby repealed : provided, that such repeal shall not affect any title to any tract of land secured in virtue of said treaty."

Act of Congress of May 23d, 1844, entitled "An Act for the Relief of the Citizens of Towns upon the Lands of the United States, under certain circumstances."

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That whenever any portion of the surveyed public lands has been, or shall be settled upon and occupied as a town site, and therefore, not subject to entry under the existing preëmption laws, it shall be lawful in case such town or place shall be incorporated, for the corporate authorities thereof, and if not incorporated, for the Judges of the County Court for the county in which such town may be situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust, for the several use and benefit of the occupants thereof, according to their respective interests ; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same is situated : provided, that the entry of the land intended by this act be made prior to the commencement of the public sale of the body of land in which it is included, and that the entry shall include only such land as is actually occupied by the town, and be made in conformity to the legal subdivisions of the public lands authorized by the Act of twenty-fourth of April, 1820, and shall not in the whole exceed three hundred and twenty acres ; and provided also, that any act of said trustees, not made in conformity to the rules and regulations herein alluded to, shall be void and of none effect ; and provided also, that the corporate authorities of the town of Weston, in the

county of Platte, State of Missouri, or the County Court of Platte county in said State, shall be allowed twelve months from and after the passage of this act, to enter at the proper land office the lands upon which said town is situate."

Act of Congress of March 3d, 1853, entitled "An Act to Provide for the Survey of the Public Lands in California, the Granting of Preëmption Rights therein, and for other purposes."

" Sec. 8. *And be it further enacted,* That the public lands, not being mineral lands, occupied as towns or villages, shall not be subdivided, or subject to sale, or to be appropriated by settlers under the provisions of this act, but the whole of such lands, whether settled upon before or after the survey of the same, shall be subject to the provisions of the act entitled 'An Act for the Relief of the Citizens of Towns upon the Lands of the United States, under certain circumstances,' approved May 23d, 1844 ; except such towns as are located on or near mineral lands, the inhabitants of which shall have the right of occupation and cultivation only until such time as Congress shall dispose of the same ; nor shall any lands specially reserved for public uses be appropriated under the provisions of this act."

The following are the sections of the Acts of the Legislature of this State, mentioned in the opinion of the Court, which bear upon the case :

Act of the Legislature of April 3d, 1856, entitled "An Act amendatory to an Act entitled 'An Act to Provide for the Disposal of Lots in the Towns and Villages on the Public Lands in Humboldt county,' passed April 27th, 1855."

" Section 1. Section first of said act is amended so as to read as follows:

" Sec. 1. The public lands, not being mineral lands, occupied as towns and villages in the county of Humboldt at any time after the passage of this act, shall be entered at the proper land office by the corporate authorities of any such town, if the same be incorporated, and if not incorporated, by the Judge of the County Court of Humboldt county, in trust for the several use and benefit of the occupants of such town according to their respective interests, in accordance with the provisions of an Act of Congress enti-

Ricks *v.* Reed.

tled 'An Act for the Relief of Citizens of Towns upon the Public Lands of the United States, under certain circumstances,' approved May 23d, 1844, as amended by an Act entitled 'An Act to Provide for the Survey of Public Lands in California, the Granting of Pre-emption Rights therein, and for other purposes,' approved March 3d, 1853.

" SEC. 3. Section third of said act is amended so as to read as follows:

" SEC. 3. Immediately after the entry of the lands at the proper land office, as provided by the first section of this act, the County Judge, or corporate authorities, as the case may be, shall cause notice to be put in the newspapers published in said county, or if none be published therein, then in a newspaper published most convenient thereto, to be inserted once a week for the term of three months, requiring every claimant or claimants of any town lot or lots, or parcel of land, to file in the office of the County Clerk of said county, in case the town is unincorporated, or with the corporate authorities thereof, if the town be incorporated, within three months from the date of the first publication of the notice, a statement of his or their claim, describing particularly the lot or lots, or parcels of land, setting forth the grounds upon which it is founded, and within sixty days after the expiration of the notice as aforesaid, proof of such claim, and payment of the price fixed on the lot or lots, or parcels of land, claimed as hereinafter provided, must be made ; and no claim shall be filed, or any proof shall be permitted to be made after the terms respectively prescribed in this section.

" SEC. 5. Section fifth of said act is amended so as to read as follows:

" SEC. 5. The evidence required to establish any claim to any lot or lots, or parcels of land, in any town in said county, under the provisions of this act, shall be that the claimant thereof is a citizen of the United States, or has declared his intention to become such previous to the filing of his claim as hereinbefore provided, and is a resident of said county, and that the claimant was one of the original occupants and locators of such town, or holds his right to such lot or lots, or parcels of land, from such original occupant and locator, or his assignees : provided, no right to any unimproved lot

Ricks *v.* Reed.

or lots, or parcels of land, as last above mentioned, acquired after the passage of the act to which this is amendatory, shall be respected, unless the person from whom the same be acquired be at the time a resident of said county; and provided further, that any person or persons who have been in peaceable possession of any lot or lots, or parcels of land, in such town for one year next preceding the passage of the act of which this is amendatory, and has improved the same, shall be deemed to have prior right to said lots or parcels of land.

" Sec. 6. Section sixth of said act is amended so as to read as follows :

" Sec. 6. The said County Judge or corporate authorities, as the case may be, shall proceed to dispose of the lots or parcels of land claimed, as provided for in this act, and for that purpose shall, as soon as practicable, examine each and every claim filed, as herein provided, and any papers in support of the same, and hear such proof as the claimant or claimants may submit to establish his or their right thereto ; and if the same shall be found to comply with the provisions of this act, and no conflicting claim shall have been filed, the said County Judge, or corporate authorities, as the case may be, shall issue a certificate confirming his or their claim, which certificate may be recorded in the Recorder's office of said county in like manner and with the same effect as deeds are recorded.

Act of the Legislature of January 24th, 1860, entitled "An Act to amend an Act entitled 'An Act amendatory of an Act entitled 'An Act to Provide for the Disposal of Lots in the Towns and Villages on the Public Lands in Humboldt County,'" passed April 27th, 1855, approved April 13th, 1856.

" Section 1. Section seventh of said Amendatory Act is hereby amended so as to read as follows :

" Sec. 7. In all cases where there shall be a dispute or contest in regard to the title to any lot or lots, or parcels of land, in the said towns, the County Judge or the corporate authorities, as the case may be, shall hear the testimony relating thereto, and shall decide upon the same and enter their decision upon their minutes of said hearing, and thereupon, in case there shall be no appeal from such decision within sixty days from the time the same is so

entered, they shall then issue their certificate to the person or persons to whom the said lot or lots, or parcels of land, may have been awarded ; and in case any claimant or claimants of any such lot or lots, or parcels of land, as may have been awarded, shall feel aggrieved by the said decision, such claimant or claimants may take an appeal therefrom to the County Court of the county of Humboldt within sixty days from the time such decision may have been made and entered ; such appeal shall be made by filing, within that time, with the said authorities notice thereof, and with the Clerk at the said County Court a complaint, and by serving a copy of such notice and complaint on the contesting party ; and if there be more than one contesting party, claiming also adversely to other contestants, then on each of said parties.  The said contestant or contestants shall answer or demur at and within the time provided for in civil actions ; and in all respects the pleadings and all proceedings shall be governed by the same rules applicable to actions commenced in a Court of Record, with the same right of appeal and in the same manner to the Supreme Court ; and when notice of appeal to the County Court shall be filed with the corporate authorities, their power to issue a certificate, as provided for in this section, shall be suspended until the appeal be dismissed, or be finally determined ; and upon such dismissal or other final determination, they shall issue said certificate to the party found by such determination entitled thereto ; *provided*, that any appeal from the County Court to the Supreme Court in any such case, shall be taken within ninety days from the final determination thereof by the County Court."

All other material facts are stated in the opinion of the Court. The plaintiffs had judgment, and the defendant appeals.

*H. W. Havens*, for Appellant.

I.   The demurrer to the jurisdiction of the County Court should have been sustained.

1.   The jurisdiction of the County Court is two-fold : appellate, in cases arising in Justices' Courts ; original, in such special cases as the Legislature may prescribe.   But its jurisdiction, whatever it be, when once acquired becomes fixed.   Appellate cannot be

changed to original in the same case, and *vice versa*.   It has juris-
diction, on appeal, of a case of forcible entry and detainer, not
because it is a special case, but because it arises in a Justice's
Court.   (*O'Callahan* v. *Booth*, 6 Cal. 63; *Zander* v. *Coe*, 5 Id.
230.)

2. The County Court being a Court of limited and inferior juris-
diction cannot enlarge its powers by implication.   (*Jones* v. *Reed*,
1 John. Ch. 20 ; *Wells* v. *Newkirk*, Id. 228.)

3. This case is in no sense " special," either in its essence or form
of proceeding.   It is an action to try title to land, and for this the
Courts have always afforded a remedy.   Because the title is derived
from Legislative grant, it is not, therefore, special.   The express
condition precedent of the grant is " occupancy," the most ancient
ground of title known to man.

The proceeding also, by the Amendatory Act of 1860, is
made to conform to the code of procedure in all other cases in
Courts of Record.   Contests, therefore, arising between several
claimants for the same land, under the Act of Congress, may be
settled and adjusted in the Courts, just as any other adverse claims
to property are adjusted.

II.   The Acts of the Legislature are in conflict with the Act of
Congress in relation to towns on public lands ; and while profess-
ing to make regulations in conformity with its provisions for the
disposal of lots in towns, virtually impair and defeat its true intent
and operation.

1. The Act of Congress of May 23d, 1844, operates as a direct
grant to " occupants," according to their respective interests, of the
lands " occupied " by them.   The word " occupants " has no legal,
technical signification different from the sense in which it is ordin-
arily used.   It must, therefore, be construed according to its plain
and commonly accepted import ; that is : any person claiming the
benefit of the act, must be an actual *bona fide* occupant, seized in
person of the land claimed.   More is not required ; less will not
suffice.   A mere technical " possession," which in law follows title
and may vest in a person who never saw the land, will not fill the
condition of the grant.

But the fifth section of the Act of the Legislature of April 3d,

1856, changes and modifies the condition of the grant, by requiring the claimant to be not only an " occupant," but an " original locator," or assignee of such locator ; or that his " possession," not " occupancy," must have begun at a specified time, and be accompanied by improvements, &c.—requisites not found in the Act of Congress, from which its vitality must be derived.

2. The Act of Congress being a direct grant to " occupants," vests in them *eo instante* from the act of " occupancy " an absolute and indefeasible title to the land " occupied," and no power is given to the Legislature over such lands.

The " rules and regulations " which the Act of Congress authorizes the Legislature to make, concern only the unoccupied lands ; because such " rules and regulations " point exclusively to " the disposal of the lots," and the " proceeds of the sales thereof." But the " occupied " lots are already " disposed " of. They are granted to the occupants, and no act or thing remains to be done in regard to them, except the formal entry, by the trustees at the proper Land Office, of the legal subdivisions embracing them. The instant such entry is made, the benefit enures directly to the " occupants," and no conveyance, even from the trustees, is necessary ; for having the equitable title by Act of Congress, the law will presume that to have been done which should be done.

The " trust " vested in the trustees, by the Act of Congress, as to " occupied " lots, is not coupled with any interest in or power over the land so occupied. It is a mere technical, naked trust, adopted for the sole purpose and as a convenient mode of divesting the Government of the strict legal title—the equitable title having passed by the act itself.

The " occupied " lots, therefore, being already granted, cannot be " sold or disposed of " by the trustees. But the unoccupied lots, of which in all towns there will be some, are proper subjects of such disposition and sale by town authorities for town purposes, and it is for the sale and disposition of these, and these alone, the Legislature was empowered to make " rules and regulations."

So far, then, as the " occupied " lots are concerned, the investiture of the trustees by the Legislature with judicial power over them was not only unnecessary, but was unwarranted by the Act of Congress.

III.   The Court erred in striking out a portion of the answer. The portion struck out sets forth facts material to appellant's claim to the land in dispute ; which, under the Act of Congress, conferred upon him title to the land.

IV.   The Court erred in excluding the agreement between The Mendocino Exploring Company and The Union Company, and the evidence offered in connection with it.   This evidence is to be considered in connection with the fact that the certificate of acknowledgment to the conveyances from Wilson to Crosier and from Crosier to the plaintiffs was not authenticated by a notarial seal, as required by law, to authorize the same to be recorded.

*Walter Van Dyke,* for Respondents.

I.   The demurrer was properly overruled.

1. The County Court had jurisdiction by law ; and the law is valid, because not prohibited by the Constitution, either in terms or by implication.   (*People* v. *Coleman,* 4 Cal. 46 ; *People* v. *Bigler,* 5 Id. 23 ; *Ross* v. *Whitman,* 6 Id. 361 ; *State* v. *Rogers,* 13 Id. 159.)

2. To hold that the appellate jurisdiction of the County Court is confined to cases arising in Justices' Courts, is to convict the framers of the Constitution of gross absurdity.   Municipal and other inferior Courts can be established by the Legislature whose decisions would be final, while great care has been taken that the decisions of Courts of record may be reviewed on appeal.

The reason, doubtless, why Justices' Courts alone are referred to in section nine of article six, is that they are the only inferior Courts mentioned by name in the Constitution, and there is nothing in this which would preclude the Legislature, when such other inferior Courts are established, from authorizing appeals therefrom to the County Court.

The Legislature, the Courts and the Bar have acted on this view of the Constitution from the organization of the State Government. See the Act concerning Courts of Justice and the Civil Practice Act, respecting Mayors' and Recorders' Courts and taking appeals therefrom to the County Court.

3. Such appellate power in the County Court does not trench

upon the constitutional jurisdiction of any other Court, and therefore is not obnoxious to the rule laid down by this Court in *Caulfield* v. *Hudson, Zander* v. *Coe* and *Reed* v. *McCormick,* and other cases wherein the different judiciary articles have been construed.

4. If the Legislature can confer appellate power on the County Court from Mayors and Recorders, there is no reason why such jurisdiction may not embrace cases arising in other inferior Courts, or before Boards or officers exercising judicial or *quasi* judicial functions.

The Constitution is not a grant of power or an enabling act to the Legislature, but only restrictive upon its general powers. (*Hobart* v. *Supervisors of Butte County,* 17 Cal. 23 ; *Smith* v. *Judge of Twelfth District,* Id. 547 ; *State* v. *Rogers,* 13 Cal. 158 ; *Thompson* v. *Williams,* 6 Id. 88 ; Smith's Const. Law, 312, 313.)

Unless there is a clear repugnance between the law and the Constitution, the rule is to sustain the law. (*People* v. *Burbank,* 12 Cal. 384, and cases already cited.)

5. The Legislature has acted upon the supposition that appellate power can be conferred on the County Court from Boards or officers in cases of a judicial nature. See the various acts granting appeals from the Boards of Supervisors in certain cases of awarding damages for opening roads, etc., and among others the Laws of 1860, 42, section six, of the Act concerning Roads and Highways in certain Counties.

6. This being a "special case" within the meaning of the Constitution, the Legislature can impose it upon the County Court either originally or by way of appeal. (Sec. 9, art. 6, Constitution; *O'Callahan* v. *Booth,* 6 Cal. 66 ; *Jacks* v. *Day,* 15 Id. 91.)

II. The Act of the Legislature of April 3d, 1856, prescribing rules and regulations to govern the corporate authorities in carrying out the law of Congress of May 23d, 1844, "For the Relief of Citizens of Towns upon the Public Lands of the United States under certain circumstances," is valid and constitutional.

1. The Act of Congress presupposes that no State or territory will have a form of Government whereby the Legislature would be prohibited from the exercise of such proper and reasonable control

over municipal bodies within its limits.    In fact, this is the peculiar province of the local Legislatures, and for this reason was doubtless left by Congress to them.    (*Hart* v. *Burnett*, 15 Cal. 530, sustaining the act ratifying the Van Ness Ordinance; *Payne & Dewey* v. *Treadwell*, 16 Id. 220.)

Because the duties to be performed by the corporate authorities under said act are in part judicial in their nature makes no difference, unless the act takes from some of the constitutional tribunals a portion of their jurisdictional rights.

Boards of Supervisors exercise *quasi* judicial powers; (8 Cal. 58) the corporate authorities of cities and towns the same.    Our Constitution places county and town governments on the same footing.    (Art. 11, secs. 4 and 9; See also Laws of 1857, authorizing town authorities of Eureka to dispose of water front to occupants and mill owners, and the various acts in regard to State lands in San Francisco; Act creating State Register's office, etc., wherein judicial or *quasi* judicial powers are exercised.)

2. The prescribing of a rule of evidence by which to ascertain the respective interest of the occupants of the town in the trust lands, was a necessary and proper exercise of legislative authority. (*Hart* v. *Burnett*, 15 Cal. 530; *McClintock* v. *Bidden*, 5 Id. 99; *Nims* v. *Palmer*, 6 Id. 8; *Payne* v. *Treadwell*, 16 Id. 220.) The corporate authorities or Judge in the execution of the trust must follow strictly the rules and regulations.    If there are none, which would be the case were the act held unconstitutional, then the execution of the trust must be suspended till some rules and regulations are prescribed, and every act thus far taken, as to the disposal of the lots in the town, is " void and of no effect."

The County Court being governed by the rules and regulations prescribed, as the corporate authorities should also have been governed, could not admit any evidence of title or claim to lots not authorized by those rules and regulations, and therefore properly sustained the motion to strike out the portion of appellant's answer which set up a claim to the lots in controversy founded upon a pretended title repugnant to the provisions of the act in question.

III.    The deed from Wilson, one of the original occupants and locators, to Crosier, and the deed from Crosier to the plaintiffs were properly admitted.

The object of the Act of Congress was to provide a means whereby the first settler on the public lands eligible for a town site might secure the reward due to his enterprise, and at the same time encourage the building up of a town.  By becoming a town or place of trade, the land is removed from the operation of the "Individual Preëmption Act," but through the means of a trustee the original occupant or settler, or his grantees, can still obtain a title. The restriction in the Individual Preëmption Act against alienation for good reasons, is not contained in the Municipal Preëmption Act; hence, lots in towns on the public lands have always been the subject of trade and speculation.  It is good policy to protect such purchasers in the enjoyment of that species of property, otherwise there would be no sales of lots in such towns, and the lands would be held in the hands of the first few occupants until such time as a legal title could be obtained.  This would prevent the building up of towns, and would therefore be against public policy as well as against the evident intention of the law.  (Appendix Congressional Globe, 1st Sess. 28th Cong. 581, 599, 601, Senate debate on Town Site Act of 1844; See Act of this State recognizing the rights of the grantees of the original occupants or claimants in towns on public lands, Laws of 1853, 151; Act to authorize location of the town site of Crescent City, Laws of 1859, 24.)

IV.  There was no error in excluding the agreement of certain pretended companies.

Wilson was shown to be the original locator of the tract of land, including the lots in dispute, and recognized as the owner and possessor thereof.  Crosier was a purchaser from Wilson for a valuable consideration, in good faith, and without notice of this private agreement or compact.  As such, he became seized of Wilson's interest, unaffected by any private unrecorded compact or agreement. ( *Call* v. *Hastings*, 3 Cal. 183; *Chamberlain* v. *Bell*, 7 Id. 292.) Having thus become seized, unaffected by said compact or any private agreement of Wilson with said companies, he had a perfect right to convey it in the same condition to respondents, and the fact that one of them may have been cognizant of the existence of said pretended compact would make no difference.  If any have reason to complain of Wilson's alleged bad faith in the premises, it is only

those who may have sustained some injury by his sale to Crosier—clearly not the appellant—who repudiates the Wilson title.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

The Act of Congress of September 4th, 1841, " To Appropriate the Proceeds of the Sales of the Public Lands, and to Grant Preemption Rights," in its tenth section authorizes the entry by individuals, in certain cases, of portions of the public lands, not exceeding one hundred and sixty acres, upon paying the minimum price of the same to the United States; in other words, confers preëmptive rights or privileges upon individuals on compliance with certain conditions.    But the act, in the same section, reserves certain portions of the public lands from the exercise by individuals of this right or privilege.    It declares, among other things, that no portion of the lands " which have been selected as the site for a city or town " shall be liable to entry under its provisions.

The Act of Congress of May 23d, 1844, " For the Relief of the Citizens of Towns upon the Lands of the United States under certain circumstances," authorizes the entry, at the like minimum price, of portions of the surveyed public lands " settled upon and occupied as a town site " by the authorities of the town, when the town has been incorporated, and when not incorporated, by the Judges of the County Courts of the counties within which the town is situated; such entry to be " in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or territory in which the same is situated."

The Act of Congress of March 3d, 1853, " Providing for the Survey of the Public Lands in California, the Granting of Preemption Rights therein, and for other purposes," whilst placing the public lands of the United States in this State, with certain exceptions, " subject to the preëmption laws of September 4th, 1841," exempts from sale under its provisions the lands " not being mineral lands, occupied as towns or villages," and provides that the

Ricks *v*. Reed.

whole of such lands, whether settled upon before or after the survey of the same, shall be subject to the provisions of the Act of May 23d, 1844.

The Legislature of this State, in order to give effect to the Acts of Congress with reference to the public lands of the United States in the county of Humboldt, occupied as towns or villages, passed on the twenty-seventh of April, 1855, an act providing for the entry, at the proper Land office, of such town or village lands, and the disposition of the town or village lots.   On the third of April, 1856, this Act of 1855 was amended and made to conform more closely than it did in its original shape with the legislation of Congress.   As amended, it provides that the corporate authorities, or the County Judge, as the case may be, immediately after the entry of the lands, shall cause notice to be published in certain newspapers, once a week for the period of three months, requiring claimants of town lots to file, within three months from the date of the first publication, in the office of the County Clerk, in case the town is unincorporated, or with the corporate authorities, if the town be incorporated, a statement of their claims, particularly describing the lots, and setting forth the grounds upon which their claims are founded ; and to present, within sixty days after the expiration of the notice, proof of their claims, and of the payment of the price fixed by the act ; and declares that no claim shall be filed or proof be permitted after the periods respectively prescribed.   The act as amended also designates the evidence which shall be required to establish the claims asserted.   Its fifth section, which relates to this subject, is as follows : " The evidence required to establish any claim to any lot or lots, or parcels of land in any town in said county, under the provisions of this act, shall be that the claimant thereof is a citizen of the United States, or has declared his intention to become such previous to the filing of his claim as hereinbefore provided, and is a resident of said county, and that the claimant was one of the original occupants and locators of such town, or holds his right to such lot or lots, or parcels of land, from such original occupant and locator or his assignees ; *provided*, no right to any unimproved lot or lots, or parcels of land, as last above mentioned, acquired after the passage of the act to which this is

amendatory, shall be respected, unless the person from whom the same be acquired be at the time a resident of said county; *and provided further*, that any person or persons who have been in peaceable possession of any lot or lots, or parcels of land, in such town for one year next preceding the passage of the act of which this is amendatory, and have improved the same, shall be deemed to have prior right to said lots or parcels of land."

By another section of the same Amendatory Act, the County Judge or corporate authorities, as the case may be, are required to dispose of the lots claimed, and for that purpose to examine, so soon as practicable, every claim filed, and any papers in support of the same, and hear such proof as may be submitted to establish the right of the claimant; and if the same be found to comply with the provisions of the act, and no conflicting claim be filed, to issue to him a certificate confirming his claim.

An Act of the Legislature, passed on the twenty-fourth of January, 1860, amending a section of the Amendatory Act of 1856, provides for proceedings in case there is any dispute or contest in relation to the title of the lots claimed. It declares, in substance, that where there is any dispute or contest, the County Judge or the corporate authorities, as the case may be, shall hear the testimony relating thereto, and decide upon the same, and enter their decision upon the minutes of the hearing; and if there be no appeal from such decision within sixty days, shall issue their certificate to the persons to whom the lots are awarded; that if any claimant feel aggrieved by the decision, he may take an appeal therefrom to the County Court within sixty days thereafter; that the appeal shall be made by filing with the said authorities notice thereof, and with the Clerk of the County Court a complaint, and serving a copy of the notice and complaint on the contesting party; that to the complaint the contestant shall answer or demur within the time provided in other civil actions; and that " in all respects the pleadings and all proceedings " shall be governed by the rules applicable to actions in Courts of Record, with the same right of appeal and in the same manner to the Supreme Court; that when notice of appeal is filed with the corporate authorities, their power to issue a certificate to the successful claimant before them shall be

suspended, until the appeal be dismissed or finally determined ; and that upon such dismissal or other final determination, they shall issue the certificate to the party found by such determination entitled thereto.

The town of Eureka, in Humboldt county, was incorporated by an Act of the Legislature, on the eighteenth of April, 1856, and the corporate authorities consisted of a Board of Trustees.  The town is located upon public lands of the United States, which are not mineral lands, or near such lands, and were regularly entered in the proper Land Office by its authorities under the Acts of Congress to which we have referred.  After such entry, the trustees gave the notice provided by the Act of the Legislature of 1856, requiring claimants to file a statement of their claims and to present proofs of the same ; and under the notice, conflicting claims were presented to the lots which are the subject of the present controversy.  The action is brought under the Act of the twenty-fourth of January, 1860, the substance of which we have stated above, to determine between these conflicting claims.  Both parties submitted to the Board of Trustees proofs of their respective claims, but the Board awarded the lots to the claimant Reed.  The adverse claimants, C. S. and Thomas Ricks, thereupon gave notice of appeal from the decision of the Board, and filed their complaint against the successful contestant.  The complaint refers to the Acts of Congress and the legislation of the State, and after mentioning the incorporation of the town, the vesting of the corporate authority in a Board of Trustees, and the public character of the lands, alleges that the authorities undertook the execution of the trust imposed by those acts and that legislation, and after entering the lands gave public notice requiring the claimants to file a statement of their claims ; that the plaintiffs, within the time prescribed and in pursuance of the notice, filed such statement of their claim to the lots ; that the ground of their claim was, that they were citizens of the United States, residents of the county of Humboldt, and occupants of the town, and that they held title and right to the lots from the assignees of one of the original occupants and locators of the town, and by peaceable possession and improvement of the same ; and that thereafter, within the time required by the notice and law,

37

they submitted to the corporate authorities competent and sufficient proof in support of their claim ; but that the Board, disregarding the requirements of the acts mentioned, and in violation of their duties, rejected the claim and confirmed the adverse claim of the contestant, Reed, who set up some right to the lots, but who, as the plaintiffs allege, held no proper or legal right thereto, and failed to prove any such to the Board.   The complaint concludes with a prayer for judgment, that the plaintiffs be awarded the lots, and that a proper certificate be issued to them.   To this complaint the defendant demurred, on the alleged ground that the County Court had no jurisdiction of the subject of the action, and that the complaint did not state facts sufficient to constitute a cause of action. The demurrer being overruled, the defendant filed his answer, in which he insists that the rules and regulations of the legislative authority of the State were not intended, by the Acts of Congress, to confer upon the corporate authorities the power to determine the right of the defendant or of any other person to any lot or lots, or parcels of land in the town.   He also denies that the plaintiffs have any lawful right or claim to the lots in controversy, or ever had peaceable possession of the same, but on the contrary, avers that in the year 1855, the premises were in the actual, peaceable possession and occupancy of one James R. Duff, a citizen of the United States, and a resident of Humboldt county, and were improved by him ; that afterwards, in ˉanuary, 1856, the defendant, by the permission and consent of the said Duff, entered upon the possession of the lots and improved the same, and has since then continued in the actual and peaceable possession and occupancy thereof; that the premises were conveyed to him by the said Duff by deed, duly executed, acknowledged and recorded, bearing date on the thirtieth of August, 1859 ; and that they are of the value of $2,000.   This portion of the answer alleging a right derived from Duff was, on motion of plaintiffs, stricken out as irrelevant and immaterial.

On the trial, the plaintiffs proved that Isaac Wilson was one of the original occupants and locators of the town, and that he took up and occupied a tract of public land at the time unoccupied, containing one hundred and sixty acres, or thereabouts, embracing the lots

in controversy, and then traced title, by deed from him to one Crosier, dated in December, 1850, and from Crosier to themselves, dated in May, 1853.   The proof of the original occupancy and location by Wilson was objected to as irrelevant, on the alleged ground that such occupancy and location were unathorized by any Act of Congress, and that the provisions of the Act of the Legislature of the State upon this subject were inoperative and void. To the mesne conveyances the further objection was taken that they were not properly acknowledged and recorded.   The several objections were overruled; and with the additional proof that the plaintiffs were citizens of the United States, and residents and occupants of the town of Eureka, they rested their case.

In defense to the action, the defendant produced a contract entered into in May, 1850, between two companies styling themselves respectively The Mendocino Exploring Company and The Union Company, by which the members of the first named company agreed to locate and secure three quarter sections of land opposite to the same number of sections selected by the latter company, and that the six quarter sections when surveyed should form a site for the town of Eureka, and that the town when laid out should be allotted to each member of both companies in equal proportions ; and offered to prove that Isaac Wilson, the grantor, from whom the plaintiffs claim to derive their title, was a member of the Union Company, and in pursuance of the contract in question and in trust for the equal benefit of the parties thereto, located the land described in his conveyance to Crosier, and that at the date of this conveyance, C. S. Ricks, one of the plaintiffs, knew of the existence of the contract, and the fiduciary capacity in which Wilson acted ; but under the objection of the plaintiffs the agreement and evidence were excluded.   The Court thereupon rendered judgment for the plaintiffs, and awarded the premises to them.   From this judgment the defendant appeals.

The objections taken by the appellant to the proceedings and judgment of the County Court relate, as appears by the statement we have made : 1st, to the jurisdiction of the Court ; 2d, to the constitutionality of the legislation of the State requiring evidence that the claimant of lots was one of the original occupants or

locators of the town, or derives his title to the lots from such origi-
nal occupant and locator ; and 3d, to the exclusion of the agree-
ment between the Mendocino Exploring Company and the Union
Company, and the evidence offered in connection with it.    The
determination of the second objection will dispose of the position
taken to the sufficiency of the complaint, and to the ruling of the
Court in striking out a portion of the answer.

1. The Constitution provides that the County Courts shall have
such jurisdiction, in cases arising in Justices' Courts and in special
cases, as the Legislature may prescribe, but shall have no original
jurisdiction except in such special cases."    (Art. 6, sec. 9.)    The
jurisdiction thus conferred is both appellate and original.    It is
appellate as to cases arising in Justices' Courts, and in special
cases arising from the action of Boards or officers exercising judicial
or quasi judicial functions.    The extent of such jurisdiction is such
" as the Legislature may prescribe," subject only to the qualifica-
tion that it does not trench upon and exclude the jurisdiction of the
superior tribunals.    Under the clause in question, provision has been
made in numerous instances for appeals from the action of Commis-
sioners or Boards of Supervisors in awarding damages where private
property is taken for public uses.    (See Act concerning Roads and
Highways in the Counties of Humboldt, Napa and Siskiyou, of Feb-
ruary 22d, 1860, sec. 6.)    And we do not perceive any inhibition in
the Constitution to vesting a like appellate jurisdiction in the County
Court from the action of the Board of Trustees of the town of
Eureka in the execution of the trust imposed by the Acts of Con-
gress and the legislation of the State in the disposition of the lands
entered by them.    But in fact, the jurisdiction vested by the Act
of January 24th, 1860, is not appellate, though so designated.    It
is original jurisdiction which is conferred.    The right of the parties
to the lots, under the rules and regulations prescribed by the legis-
lative authority of the State, is the subject of consideration and
determination, without reference to the evidence presented to the
Board of Trustees.    The whole matter is investigated anew ; and the
action of the Board of Trustees only becomes material as furnishing
authority for the proceeding before the County Court.    When,
herefore, the act says that in case any claimant shall feel aggrieved

by the decision of the Trustees he may take an appeal to the County Court, and requires the proceedings there to be by complaint, answer or demurrer, and in conformity with the rules applicable to actions in Courts of Record,. it only means that if the claimant be dissatisfied with the decision of the Trustees, he may have his right investigated and determined in an action brought against the successful claimant in the County Court.

In the Act of Congress of March 3d, 1851, for the settlement of private land claims in California, provision is made for the investigation of claims to land held under grants from the Spanish or Mexican Governments by a Board of Commissioners. By a subsequent act, passed the thirty-first of August, 1852, it is declared that the filing of a certified transcript of the proceedings and decision of the Commissioners with the Clerk of the United States District Court " shall, *ipso facto*, operate as an appeal for the party against whom the decision" is rendered. And in the case of the *United States* v. *Ritchie*, (17 How. 533) it was objected that the law in thus prescribing an appeal was unconstitutional, as the Board of Commissioners, as organized, was not a Court under the Constitution, and could not therefore be invested with any of the judicial powers conferred upon the General Government; but the Supreme Court said, in answer to the objection, " that the suit in the District Court is to be regarded as an original proceeding, the removal of the transcript, papers and evidence into it, from the Board of Commissioners, being but a mode of providing for the institution of the suit in that Court. The transfer, it is true, is called an appeal; we must not, however, be misled by a name, but look to the substance and intent of the proceeding. The District Court is not confined to a mere reëxamination of the case as heard and decided by the Board of Commissioners, but hears the case *de novo*, upon the papers and testimony which had been used before the Board, they being made evidence in the District Court; and also upon such further evidence as either party may see fit to produce." So in the present case, we must not be misled by the use of the word appeal, but look to the substance and intent of the proceeding. Thus looking, we must see that there is nothing appellate in the action authorized before the County Court, but only a mode pro-

vided for testing before one of the regularly constituted tribunals of the country, the conflicting rights of adverse claimants to the town lots, under the Acts of Congress and the legislation of the State.

The inquiry then arises whether the action authorized in the County Court is a " special case," for of such cases only can that Court take original civil jurisdiction. The proceeding before the Board of Trustees is clearly a special case; it is a proceeding purely statutory, commenced and prosecuted for the ascertainment of a particular fact to guide the Board in the execution of the trust devolved upon them. It is not an ordinary action at law or equity, or conducted according to the forms of such action. But the proceeding in the County Court is quite different from that before the Board of Trustees. It there takes the form of a regular action; a complaint is to be filed and the contestant must answer or demur within the time provided in ordinary civil actions, and the pleadings and proceedings are to be governed by the same rules applicable to actions in other Courts of record. But still we are clear that the action is a " special case." It is a proceeding marked by one peculiarity, which distinguishes it from the class of ordinary actions at law or equity. The parties who are to be governed by its judgment—the Board of Trustees—are not litigants before the Court, or parties to the record. They do not appear in person or by attorney in the action, and yet are required to yield obedience to and carry into effect the determination of the Court. The proceeding is in effect only an inquisition, through the form of a regular action, like the proceeding before the Board for the ascertainment of a particular fact, upon which, when once judicially ascertained, the Board must act independent of any volition on its part. It is, therefore, a special case, within the most narrow construction ever given to those words by this Court. (*Parsons* v. *The Tuolumne Co.*, 5 Cal. 43; *Jacks* v. *Day*, 15 Id. 91; *Arnold* v. *Rees*, 18 N. Y. 57; *Doubleday* v. *Heath*, 16 Id. 80; *Kundolf* v. *Thalheimer*, 2 Kern. 593.) It follows that the County Court had jurisdiction of the action, and there was no error in the ruling of the Court to that effect.

2. The objection to the constitutionality of the legislation of the

SUPREME COURT—JANUARY TERM, 1862.    575

Ricks *v.* Reed.

State, prescribing the evidence necessary to establish the title or right of the claimant to the lots claimed, is not well taken.    It is true, the entry of the town lands by the corporate authorities or County Judge is, under the Acts of Congress, "in trust for the several use and benefit of the occupants thereof according to their respective interests;" but this provision does not establish that it was the intention of Congress to give the benefits of the entry to mere temporary occupants of particular tracts at the date of the entry, without reference to the character of their occupancy, and thereby in many instances deprive the original *bona fide* settlers of the premises and improvements in favor of those who had by force or otherwise intruded upon their settlement.    Were such the effect of the provision in question, the trespasser of yesterday or the tenant of to-day would often be in a better position than parties who, by their previous occupation and industry, had built up the town, and made the property valuable.    We do not think Congress could have contemplated that results of this nature should follow from its legislation, but on the contrary, that it intended that the original and *bona fide* occupants should be the recipients of the benefits of the entry to the extent at least of their interests—that is, of their actual occupancy and improvements.    And the legislation of the State is directed to carry this intention into effect, and in order that the right of the original occupants and locators should not be preserved without continued occupancy, the provision is made that any person who has been in peaceable possession of a lot one year previous to the passage of the Act of 1855, and has improved the same, shall be deemed to have the better right.    This legislation is in our judgment both constitutional and wise.

It follows from this view of the legislation of the State, that the matter stricken out of the answer of the defendant was irrelevant and immaterial.    The possession and improvement of Duff in 1855, from whom the defendant alleges he derived his title, did not, under that legislation, confer a right superior or equal to that of the original occupant, through whom the plaintiffs claim.    To confer a superior right, the possession must have preceded the Act of April, 1855, for the period at least of one year.    It also follows that the objection taken to the sufficiency of the complaint, based on the alleged

Ricks *v.* Reed.

unconstitutionality of the State legislation, was properly overruled. There is an objection, however, to the complaint, not taken by the appellant, and therefore not to affect the decision, which it is proper to notice, lest the complaint may become a precedent. It alleges that the plaintiffs derive their title to the lots claimed from one of the original occupants and locators of the town, without stating the name of such original occupant and locator. It should have given his name, and thus have directed the attention of the defendant to the particular fact to which evidence would be offered.

3. The agreement between The Mendocino Exploring Company and The Union Company, and the evidence offered in connection with it, were properly excluded. If Wilson sold the claim located in violation of the trust reposed in him by the companies, it was a matter for them to complain of. The defendant did not claim under or in privity with them, and was in no position to call in question the good faith of the acts of their agent. And besides, there was no evidence that Crosier, when he took the conveyance from Wilson, had any knowledge of the relation of the latter to the companies. So far as appears from the record, he was a *bona fide* purchaser for a valuable consideration. He took the claim, therefore, freed from any secret trusts, if any such existed. (*Paige* v. *O'Neal,* 12 Cal.) Whether the deeds from Wilson to Crosier and from Crosier to the plaintiffs were properly acknowledged and recorded or not, is of no consequence. The defendants did not claim under Wilson, and could not invoke the want of such acknowledgment or record for their protection. There is no question as to the due execution of these deeds, and this is all that was necessary to pass the grantor's interest, except as to subsequent purchasers from him in good faith and for a valuable consideration.

Judgment affirmed.